UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| DANTE C. MONACO, JR, | : |
| BETH ANN MONACO | : |
| DEBTORS | : CASE NO.05-48977-JBR |
| HONEY DEW ASSOCIATES, INC., | : |
| PLAINTIFF, | : |
| v. | : AP. NO. 06-4019 |
| DANTE C. MONACO, JR. and | : |
| BETH ANN MONACO | : |
| DEFENDANTS. | : |

**ORDER ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO THE PROVISIONS OF FEDERAL RULES OF BANKRUPTCY PROCEDURE 7009 AND 7012**

This matter came before the Court on the Defendants' Motion to Dismiss First Amended Complaint Pursuant to Provisions of Federal Rules of Bankruptcy 7009 and 7012 [#19] and the Plaintiff's Opposition thereto [#23]. For the reasons set forth herein, the Motion is DENIED.

**FACTS**

Because this matter presents as a motion to dismiss the complaint for failure to state a claim, the Court accepts, as it must, the factual allegations of the amended complaint as true for the purposes of this Order only. The Plaintiff, Honey Dew Associates, Inc., franchises coffee and donut shops. In or about September 2002 B&M Donuts, Inc. ("B&M") purchased an existing franchise located in Boston, Massachusetts. The franchise fee B&M is required to pay to the Plaintiff is determined by the sales generated at the Boston location.

The Defendant, Dante C. Monoco, is a co-owner and the treasurer of B&M. In

connection with the closing the Debtors, along with Eric Brookes, B&M's president and Mr. Monaco's brother-in-law, and Anna Brookes, Eric Brookes' wife and Mr. Monaco's sister, executed a document titled "Liability Agreement" whereby the Debtors and the Brookes assumed joint and several liability

> for all debts and obligations of the Franchisee to Honey Dew Associates, Inc., its successors and assigns, pursuant to a Franchise Agreement of even date herewith, and all other contracts by and between Honey Dew Associates, Inc. and the Franchisee, including without limitation, the prompt and full payments of all royalty fees....
>
> The liability of the undersigned shall operate as a continuing, unconditional and absolute obligation of the undersigned as to the due and punctual payment and performance obligations of [B&M] and not of their collectibility and enforceability only.

Among the obligations imposed on B&M pursuant to Section VIII of the Franchise Agreement is the obligation "to maintain full, complete and accurate books and accounts." The Plaintiff alleges that the Debtors also guaranteed B&M's franchise obligations.

The Plaintiff avers that at the closing of B&M's purchase and assumption of the Honey Dew franchise, it expressed concern that the purchase price and the financing costs could cause the venture to fail. It further alleges that Eric Brookes, in the presence of the Debtors, responded by overstating the amount of sales of the business and by mischaracterizing loans from family members as capital investments. The Debtors did not correct Brookes' statements.

In November 2002 the Plaintiff informally reviewed B&M's operations and concluded that B&M was not accurately preparing and maintaining its financial records, and was under-reporting its gross sales. Subsequently the Plaintiff attempted to conduct a full audit but claims it was frustrated in its attempt by B&M"s lack of financial data. Moreover it further states that the Defendant Dante Monaco participated in a scheme to defraud the Plaintiff by setting up a side

2

business, Fujami Corporation, ostensibly owned and controlled by Pompeo Peccia, an uncle of one of the Debtors. The Plaintiff further alleges that the side business was to operate out of B&M's location. Fujami never operated the side business but marketed the side business and in April 2004 the Plaintiff states that Dante Monaco arranged for Peccia to sign an agreement for the sale of the side business to a third party for $250,000. The money was applied to B&M's outstanding obligations. The sale purportedly was free and clear of any franchise obligations to the Plaintiff.

In June 2004 the Plaintiff sued the Debtors and others in state court for under-reporting B&M's gross sales. In May 2005 the state court granted summary judgment to the Plaintiff on the issue of liability. The Plaintiff alleges that during the course of the state court proceedings, Dante Monaco gave false deposition testimony regarding B&M's capital structure, the purchase of the side business from the previous franchisee, and Fujami and Peccia.

On October 13, 2005 the Debtors filed their Chapter 7 petition. The Plaintiff asserts that the schedules and statements include false oaths and statements and point to the omission of Dante Monaco's ownership interest in B&M from the original schedule B[1] and the response to question 18 of the Statement of Financial Affairs ("SFA"), the scheduling of claims against the Brookes, and the scheduling of Peccia, the Brookes, B&M, and Mario Monaco as creditors as examples. The Plaintiff also alleges that the Debtors refinanced their home and purchased a new home within the two years prior to the bankruptcy but failed to disclose the information on the SFA.

In January 2006 the Plaintiff commenced the above adversary proceeding seeking to deny

---

[1] One day prior to the first meeting of creditors, the Debtors filed an amended schedule B indicating that the Debtors jointly owned a 50% interest in B&M.

3

the Debtors their discharges pursuant to 11 U.S.C. § 727(a)(2)(A) and/or § 727(a)(4)(A) or, alternatively to except the debt owed to the Plaintiff from discharge pursuant to §§ 523(a)(6) and (c)(1) and § 523(a)(2)(A).[2] The Debtors filed a motion to dismiss pursuant to Fed. R. Bankr. P. 7009 and 7012. The Court granted the motion over the Plaintiff's opposition but permitted the Plaintiff to file an amended complaint. The amended complaint again seeks to deny the Debtors their discharges pursuant to 11 U.S.C. § 727(a)(2)(A), § 727(a)(3) and/or § 727(a)(4)(A) or, alternatively to except the debt from discharge pursuant to §§ 523(a)(6) and (c)(1) and § 523(a)(2)(A).

The Debtors seek dismissal of the amended complaint on the grounds that the amended complaint is substantially similar to the original complaint and incorporate by reference their motion to dismiss the original complaint. Specifically, they argue that the amended complaint does not survive scrutiny under either Rule 7009 or 7012.

**DISCUSSION**

Fed. Rule Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009, provides "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." The rule "requires specification of time, place and content of an alleged false representation but not the circumstances or evidence from which fraudulent intent could be inferred." *McGinty v. Beranger Volkswagon, Inc.*, 633 F.2d 226, 228 (1st Cir.1980). The rule is designed to protect a defendant from unfair surprise and so-called strike suits,[3] as well as protect

---

[2] Although paragraph 1 of the original complaint states that the complaint also contains a count pursuant to § 727(a)(3), the original complaint does not contain such a count.

[3] Strike suits are "suits that have no legal merit but which a plaintiff hopes the defendant will settle by paying the plaintiff something less than what it would cost to defend the suit." *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 471 (1st cir. 1985).

4

defendants "from groundless charges that may damage their reputations." *United States v. Parke-Davis*, 147 F. Supp.2d 39, 46 (D. Mass.2001). S*ee also New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir.1987). *Simcox v. San Juan Shipyard, Inc.*, 754 F.2d 430, 439 (1st Cir. 1985). Although "[c]ourts generally evaluate averments of fraud in the bankruptcy context more liberally than in other civil actions charging fraud," the allegations still must be specific enough to ensure a defendant is protected from unfair surprise, strike suits and damage *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 21-22 (Bankr. E.D. N.Y. 2006). "Rule 9(b) requires, in most instances, that claims of fraud be pled with particularity as to each defendant." *Kingvision Pay-Per-View, Ltd. v. Vergas*, 2001 WL 311199, *2 (D.N.H.).

Unlike Rule 9(b) which governs the specificity with which fraud actions must be pled, Rule 12(b)(6) requires that the facts as pled must state a cognizable cause of action for which relief can be granted. Rule (8)(a)(2), made applicable by Fed. R. Bankr. P. 7008, requires only that these facts be pled by "a short and plain statements of the claim showing that the pleader is entitled to relief...." When reviewing a Rule 12(b)(6) motion, a court must accept as true all material allegations of the complaint and construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). A court should not accept unsupported conclusions, however. *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989), overruled on other grounds, *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir.2004).

**Counts I and II**

Counts I (as to Dante Monaco) and Count II (as to beth Monaco) seek to deny the Debtors their discharges pursuant to §§ 727(a)(2)(A) and/or (a)(3). With respect to §

5

727(a)(2)(A), the amended complaint alleges that each "transferred, removed, destroyed, mutilated, or concealed property of the debtor" or permitted the foregoing to occur one year prior to the petition date with the intent to hinder, delay, and/or defraud the Plaintiff.

In their current Motion, as in the motion to dismiss the original complaint,[4] the Debtors invoke both Rule 9(b) and Rule 12(b)(6) as a basis for dismissal of these counts and claim that they are not responsible for and not in control of the actions of B&M. The Debtors' involvement in and control of B&M are factual matters that cannot be determined in the current procedural posture. Moreover, contrary to the Debtors' arguments, the amended complaint provides those specifics omitted from the original complaint, to satisfy the pleading requirements of Rule 9(b) and states causes of action under both §§ 727(a)(2)(A) and (a)(3). For example the amended complaint sets forth the allegations concerning Dante Monaco's alleged attempted to set up a side business to divert gross income from B&M, which the Debtors' Amended Schedule B acknowledge is an asset of the Debtors, and thus from the Plaintiff whose franchise fee is dependent upon B&M's sales. The allegations dealing with the side business identify the persons allegedly involved in that business, the approximate time when it was occurring and the sale of the side business to a third party for a purchase price that should have, at least in part, be paid to the Plaintiff.[5] The allegations are sufficient to satisfy the requirements of both Rule 9(b) and Rule 12(b)(6) with respect to a cause of action under § 727(a)(2)(A).

Although the amended complaint does not plead facts, which if true, would show Beth

---

[4]Because the current Motion does not identify which counts the Defendants believe are infirm under Rule 9(b), the Court will address the counts challenged by the Defendants in their original motion to dismiss.

[5]Neither party addresses the fact that the sale of the side business occurred outside of the one year period of § 727(a)(2)(A) nor whether there were any circumstances that would toll this period.

6

Monaco's involvement in the side business scheme, the amended complaint alleges her acceptance of responsibility for B&M's record keeping pursuant to the Liability Agreement. Although it may be difficult for the Plaintiff to prove Beth Monaco concealed B&M's assets, or permitted them to be fraudulently transferred or concealed, her responsibilities under the Liability Agreement, coupled with the alleged transfer of the side business to a family member, and the alleged use of the $250,000 generated from the sale of the side business to reduce her and her husband's obligations under the guaranty are sufficient to survive the Motion.

Moreover a cause of action under § 727(a)(3) does not sound in fraud but is based on the failure to maintain records, including records from which the Debtors' financial condition or business transactions might be ascertained. The records of B&M are just such records.

**Count III**

Count III seeks to deny the Debtors their discharges under § 727(a)(4)(A) based upon the inaccuracies in the Schedules and SFA. The Debtors respond that their Schedules and SFA contain an overabundance of information lest they later confront an argument that claims or causes of actions were waived. They attribute the major omission, namely the omission of their interest in B&M from the original schedule B, to the fact that they filed shortly before October 17, 2005, the effective date for most of the changes effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. They point to their filing of an amended Schedule B shortly before the first meeting of creditors as evidence that they did not intentionally omit their ownership interest in B&M from the schedules. They attribute their failure to disclose that they had applied for a mortgage and refinanced the same during the two years prior to filing bankruptcy to a misunderstanding of what is a "financial statement." While the Debtors'

assertions may ultimately prove correct,[6] based on the amended complaint, however, the allegations state a cause of action and are described with the kind of detail that easily satisfies Rule 9(b).

### Counts IV and V

These counts request that the debt owed to the Plaintiff be excepted from the Debtors' discharge pursuant to §§ 523(a)(6) for the Debtors' "wilful and malicious injury" to the Plaintiff by means of their alleged diversion of assets from B&M and the under-reporting of B&M's sales to the Plaintiff. Just as the Counts I and II survive the Motion, so too do these counts.

### Counts VI and VII

These counts request that the debt owed to the Plaintiff be excepted from the Debtors' discharge pursuant to §§ 523(a)(2)(A) because the Debtors remained silent when Brookes provided information that the Debtors knew to be false thereby inducing the Plaintiff to proceed with the transfer of the franchise to B&M. The allegations are sufficient to survive dismissal.

Dated: August 16, 2006

/s/ Joel B. Rosenthal
Joel B. Rosenthal
United States Bankruptcy Judge

---

[6] The Debtors' responses are those set forth in the Motion; these responses are not evidence but rather are the arguments of counsel.